1  JOHN MICHAEL GUARAGNA, Bar No. 199277
   john.guaragna@dlapiper.com
2  **DLA Piper LLP (US)**
   401 Congress, Suite 2500
3  Austin, TX 78701
   Telephone: 512.457.7125
4  Facsimile: 512.457.7001

5  AARON WAINSCOAT, Bar No. 218337
   aaron.wainscoat@dlapiper.com
6  **DLA PIPER LLP (US)**
   2000 University Avenue
7  East Palo Alto, CA 94303
   Telephone: 650.833.2000
8  Facsimile:  650.833.2001

9  JEFFREY JOHNSON (*Pro Hac Vice*)
   jeffrey.johnson@dlapiper.com
10 **DLA PIPER LLP (US)**
   1000 Louisiana Street, Suite 2800
11 Houston, TX 77002-5005
   Telephone: 713.425.8400
12 Facsimile:  713.425.8401

13 Attorneys for Defendant,
   SOCIAL CONCEPTS, INC.
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16

17 EMMANUEL C. GONZALEZ,                    CASE NO.  4:15-cv-01719-YGR

18              Plaintiff,

19 v.                                       **DEFENDANT SOCIAL CONCEPTS INC.'S
                                            NOTICE OF MOTION AND MOTION
20 SOCIAL CONCEPTS INC.                     FOR JUDGMENT ON THE PLEADINGS
                                            PURSUANT TO F.R.C.P. 12(C) AND 35
21              Defendant.                  U.S.C. § 101**

22                                          DATE:     October 20, 2015
                                            TIME:     2:00 PM
23                                          PLACE:  Courtroom 1, 4th Floor
                                            JUDGE:  Hon. Yvonne Gonzalez Rogers
24

25

26

27

28

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1          SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
                       PURSUANT TO 35 U.S.C. § 101 -  USDC CASE NO. 4:15-CV-01719-YGR

1    **NOTICE OF MOTION AND MOTION**

2    TO THE COURT AND ALL COUNSEL OF RECORD:

3    NOTICE IS HEREBY GIVEN that on October 20, 2015, at 2:00 PM, or as soon thereafter

4    as counsel may be heard in Courtroom 1 of the above-titled court, located at 1301 Clay Street,

5    Oakland, CA 94612, Defendant Social Concepts, Inc. ("Social Concepts") will and hereby does

6    move the Court for an order for Judgement on the Pleadings Pursuant to Federal Rule of Civil

7    Procedure 12(c) and 35 U.S.C. § 101.

8    This motion is based upon this notice, the accompanying memorandum of points and

9    authorities, all pleadings, papers and records on file in this action, and such oral argument as may

10   be presented at the hearing on this matter.

11   **STATEMENT OF RELIEF**

12   Pursuant to Civil Local Rule 7-4(a)(3), Social Concepts seeks an order from the Court

13   issuing judgement on pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Specifically,

14   pursuant to 35 U.S.C. § 101, because the patents-in-suit cover nothing more than a digital filing

15   cabinet or card catalog they are merely an unpatentable abstract idea.

16   **MEMORANDUM OF POINTS AND AUTHORITIES**

17   **FACTUAL BACKGROUND**

18   Plaintiff Emmanuel C. Gonzalez ("Gonzalez") asserts three related patents in this case:

19   U.S. Patent No. 7,558,807 (the " '807 Patent"), U.S. Patent No. 7,647,339 (the " '339 Patent"),

20   and U.S. Patent No. 8,065,333 (the " '333 Patent").[1]  These patents purport to solve the problem

21   of finding information through the Internet by using "digital labels" for websites.

22   The patents-in-suit all stem from the same original application.  The '807 Patent was the

23   first to issue, and all the patents share the same specification and prosecution history as the '807

24   Patent.  Claim 1 of the '807 Patent is representative of all the asserted claims:

25   _____

26   [1] Gonzalez originally asserted five patents, but subsequently dropped two of the five from the case, namely, U.S.
     Patent Nos. 7,873,665 and 8,296,325.  The '665 Patent was dropped on the record at the Case Management

27   Conference on July 20, 2015.  The '325 Patent was dropped during the claim construction process.  *See, for example*,
     Joint Claim Construction and Prehearing Statement in Accordance with Patent Local Rule 4-3, Docket No. 35, filed
     August 17, 2015, p. 2 (identifying that Plaintiff is asserting claims from only the '807, '339 and '333 Patents).  To the

28   extent these two patents were still asserted, they also would be patent ineligible under § 101 for the same reasons set
     forth herein.

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-1-
SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 -  USDC CASE NO. 4:15-CV-01719-YGR

A host website apparatus for listing subscribers comprising:

a computer system,

said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels;

said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and

said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities.

Dependent claim 2 merely specifies that the website is configured to a specific subject and claim 3 is simply claim 1 rephrased as a method claim.  Independent claim 1 of the '339 Patent is a method claim that also covers assigning (in this case universally-accepted) labels to a website that can then be used by a search engine.  Dependent claims 2-5 of the '339 Patent simply specify the types of data that can be used to create the labels or ways for entering, editing, or organizing the data.  Independent claim 1 of the '333 Patent is essentially the same as the claims in the other patents, except that it specifies where the labels are stored and how they can be accessed. Dependent claims 2, 4, 13, 16, and 20 of the '333 Patent simply elaborate on this basic premise, adding limitations such as charging a fee for access to the search engine, limiting or controlling access to the search engine, and generating statistics.  None of these differences alter the § 101 analysis.

The '807 patent describes a way of classifying online "listings" into categories, just as was done in the classified ads of newspapers.  In particular, the '807 patent describes and claims a way of allowing searches for "listings" in a website's database, by using "unambiguous digital labels" instead of "word-matches or 'keywords.'"  '807 Pat. 3:42-44 & 4:16-23; *see also id.* at 3:1-48; 2:2-7.  According to the '807 patent,  "[a]ll existing search technologies on the Internet are based on word-matches or 'keywords', which are mere character-strings of unknown significance." *Id.* at 4:16-18.  The patent explains that "word-match technology is rather poorly

DLA Piper LLP (US)
Los Angeles

WEST\261219615.1

-2-
SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

1  suited to finding commonplace commercial information, which is, however, exactly what most

2  publishers—the Internet's paying constituents—are trying to offer through the Web." *Id.* at 2:2-

3  7.  The '807 patent purports to solve this problem by using a database "based on" the

4  "unambiguous digital labels" of the patent. *Id*

5       The specification of the patents summarizes the invention by way of "metaphor" to a

6  library's card catalog, explaining that the invention organizes websites in the same way that the

7  card-catalog organizes books:

8       There is provided a Host Website system and method in
        which subscribers label their own products and services and in
9       which similarly labeled objects and services are stored in common
        locations with hierarchical multi-parameter labels.

10      The system includes Internet-related data-gathering,
        labeling, storing and searching methods.  The system and method
11      can best be appreciated by metaphor: consider the Internet as a
        library whose books (websites) are not only scattered at random but
12      also indistinguishable from each other except upon actually being
        opened.  Internet portals are like librarians who are resigned to the
13      fact that the books (websites) are in disarray, but purport to help
        readers by speed-reading.  *The present invention creates order in*
14      *the library by establishing discrete sections where books (websites)*
        *can be organized by category,* and by codifying information about
15      each book (website) on index cards so that readers can more easily
        identify the books (websites) they need.

16

17 '807 Pat. 2:50-67 (emphasis added).[2]

18                          **SECTION 101 STANDARD**

19      In *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), the Supreme Court

20 further clarified the standard for patentability of computer-implemented inventions under § 101.

21 *Alice* invalidated a patent covering a "computer-implemented scheme for mitigating 'settlement

22 risk' (*i.e.*, the risk that only one party to a financial transaction will pay what it owes) by using a

23 third-party intermediary."  *Id.* at 2351-52.  The Court held that the patent covered only an abstract

24 idea, even though it was implemented using a computer.  *See id.* at 2360.

25      Relying on the Court's earlier decision in *Mayo Collaborative Services v. Prometheus*

26 *Laboratories, Inc.*, 132 S. Ct. 1289 (2012), *Alice* set forth a two-part test for determining patent

27 eligibility under § 101.  *See Alice*, 134 S. Ct. at 2355.  A court must first determine whether the

28 _____
[2]   The patents all share the same specification.  For simplicity, Social Concepts will only cite the '807 Patent.

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-3-

SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

1  claims are directed to a patent ineligible concept, such as an abstract idea.  *See id.*  If so, the court

2  must then determine whether the claims include additional limitations that prevent the patent from

3  effectively monopolizing the idea itself.  *See id.*  But "the mere recitation of a generic computer

4  cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under the

5  second step of the *Alice* test.  *Id.* at 2358.

6  **STANDARD FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)**

7  "Challenges to patentability under section 101 may be brought based solely on the

8  pleadings, including on a Rule 12(c) motion for judgment on the pleadings."  *Open Text S.A. v.*

9  *Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015) (granting a Rule 12(c) motion asserting

10  invalidity under § 101).  The same standard applies to both 12(c) and 12(b)(6) motions.  *See*

11  *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1010 (C.D. Cal. 2014).  "Judgment on the

12  pleadings is appropriate only 'when the moving party clearly establishes on the face of the

13  pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as

14  a matter of law.' "  *Id.* (quoting *Enron Oil Trading Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529

15  (9th Cir. 1997)).

16  In addition, a § 101 challenge should be resolved before claim construction.  *See*

17  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014) (affirming the grant of a

18  "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims"); *see*

19  *also Alice*, 134 S. Ct. at 2356-57, 2359-60 (performing both steps of the § 101 analysis without

20  any claim construction); *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687

21  F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is

22  not an inviolable prerequisite to a validity determination under § 101.").  In fact, none of the

23  Supreme Court cases applying § 101 have relied on any facts beyond the patent and well-known

24  scientific and economic principles, even when undertaking the preemption analysis in step two of

25  the *Alice* test.

26  ///

27  ///

28  ///

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-4-
SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

1

**ARGUMENT**

2

**I.      The Patents-in-Suit Cover Only the Abstract Idea of Labelling, a Well-Known and Conventional Concept.**

3

4

      **A.      Gonzalez Essentially Admitted That His Invention Is Not Patent Eligible.**

5

      In *Alice*, the Supreme Court held that "'[s]imply appending conventional steps, specified

6

at a high level of generality,' " is not enough for patent eligibility. 134 S. Ct. at 2357 (quoting

7

*Mayo*, 132 S. Ct. at 1292).  Thus, the patent's analogy to a card catalog, essentially admits that

8

the patents are invalid under § 101: The claimed invention is the application to websites of an

9

idea that brick-and-mortar libraries have used for centuries in cataloging books when adding them

10

to a library.[3]  This is also the same idea that preexisting websites like eBay and Craigslist used to

11

12

organize classified ads on the Internet to make them easier to access.

13

      **B.      The Claimed Invention Can Be Performed Without a Computer.**

14

      Applying labels to data, and then using those labels to search or organize that data, is a

15

purely mental process that could be performed without a computer.  In fact, the '807 Patent

16

specifically acknowledges that preexisting technology included websites that provided manually-

17

categorized listings of services like "Los Angeles plumbers" and "Denver restaurants."  '807 Pat.

18

2:21-22 (identifying a "manually constructed 'Yellow Pages' section" with "plumber listings");

19

2:13-16 (restaurant list website that was "assembled by hand").  "[M]ethods which can be

20

21

performed *entirely* in the human mind are the types of methods that embody the 'basic tools of

22

scientific and technological work' that are free to all men and reserved exclusively to none."

23

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011); *see also id.* at

24

1375 (holding that "a software implementation of a purely mental process that could otherwise be

25

performed without the use of a computer" is not patent-eligible, nor is "[t]he mere manipulation

26

or reorganization of data").

27

28

---

[3]   The patents-in-suit were all issued before the *Alice* decision.

WEST\261219615.1

SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

The fact that searching for "any configuration" of labels is a mental process that could be performed without a computer, using pen-and-paper, is exemplified by the card-catalog analogy the patents use to explain the invention.  A card catalog typically contains information regarding the author, title, and subject of each book.  Cards containing each of these labels for each book are then filed in the author catalog (alphabetically), the title catalog (alphabetically), and the subject catalog (numerically under the Dewey-Decimal system, and alpha-numerically under the Library of Congress system).  A user can search for books based on any configuration or combination of author, title, or subject, without a computer.  Databases could produce virtually immediate results for what was formerly a multistep search process of finding all the books by author A, and then finding within that group all those with subject S.  The fact that *paper* card catalogs were used for decades to find books based on their "author" label, their "title" label, and their "subject" label demonstrates that the concept of searching based on "any configuration of the labels" is an abstract idea.

C.    **Courts Have Routinely Invalidated Data Organization Patents Such as Gonzalez's.**

Recent Supreme Court and Federal Circuit decisions leave no doubt that the idea claimed by the patents-in-suit—applying digital labels to websites—is abstract.  The Supreme Court has held that fundamental principles for "organizing human activity" such as providing escrow services, *Alice*, 134 S. Ct. at 2356-57, and hedging, *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), are abstract ideas.  And the Federal Circuit has held:  "The concept of data collection, recognition, and storage is indisputably well-known.  Indeed, humans have always performed these functions."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also, e.g.*, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333-34 (Fed. Cir. 2015) (grouping customers and products to determine price was an

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-6-

SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

abstract idea);[4] *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, No. 2012-1673, 558 Fed. App'x 988, 992 (Fed. Cir. Feb. 26, 2014) ("Like protecting against risk, using categories to organize, store, and transmit information is well-established.").

Like Gonzalez's patents, the patents at issue in these recent cases claimed techniques for organizing or manipulating data, such as "collecting information in classified form," *Cyberfone*, 558 Fed. App'x at 992, and organizing data into "hierarchies," *Versata*, 793 F.3d at 1333-34.  The '807 Patent's claims for digitally tagging websites is indistinguishable from the many other data-organization patents the Federal Circuit already has invalidated under § 101.

**D.     Gonzalez's Proposed Claim Construction Does Not Alter the § 101 Analysis.**

Social Concepts anticipates that Gonzalez will attempt to argue that his patents cover a more elaborate or complex search methodology than set forth in the plain language of the claims. Indeed, this appears to be what he is attempting to do with his proposed construction of "search" as "dynamically filter digital labels according to configurations in accordance with the unique desires of the person directing the search."  But Gonzalez's needlessly complex construction lacks any support in the intrinsic evidence.

Even if his proposed construction were correct, however, it simply adds more elaborate verbiage without fundamentally changing the nature of the invention.  "Dynamically filtering" labels based on his "unique desires" is precisely what someone flipping through a filing cabinet or card catalog does: As he scans through the labels, he identifies the specific books or files that may be of interest to him (and his search may become more refined as it proceeds).  Moreover, both the Supreme Court and the Federal Circuit have consistently found patents far more complex than Gonzalez's unpatentable abstract.  *See, e.g.*, *Alice*, 134 S. Ct. at 2352-53; *Bilski*, 61 U.S. at 599; *Gottschalk v. Benson*, 409 U.S. 63, 65-67 (1972).

---

[4]   Although *Versata* was an appeal from a PTAB review of a CBM patent, the court concluded that the use of the "broadest reasonable" claim construction standard, instead of the "one correct construction" standard, did not alter the § 101 analysis.  *See* 793 F.3d at 1328.

DLA PIPER LLP (US)
LOS ANGELES

1    Gonzalez may also argue that his patents overcome one of the shortcomings of the prior

2    art by sourcing information from the subscriber (*i.e.*, website owner).  But this is still an abstract

3    idea; it merely enables the author of a book, instead of the librarian, to determine how the book

4    should be categorized.  In addition, innovation is not the test for validity under § 101.  Einstein's

5    general theory of relativity and Newton's explication of the laws of gravity revolutionized

6    physics, but that would not make them patent eligible.  *See Mayo*, 132 S. Ct. at 1293.

7    **II.    The Patents Employ Only Generic Computer Equipment.**

8    In *Alice*, the Supreme Court emphasized that implementing an abstract idea on a computer

9    does not make that idea patentable.  *See* 132 S. Ct. at 2358.  The patents' specification describes

10   using purely generic computing systems to implement the invention.  The specification explains

11   that the "process of creating digital labels is not dependent on any particular hardware or form of

12   software."  *See* '807 Pat. 5:46-47.  Similarly, the specification admits that the use of databases

13   and websites was well known, both by describing word-search technology for finding websites as

14   conventional and preexisting, and by explaining that the patented invention uses those

15   conventional, preexisting word-searches.  *See id.* at Fig. 6b & 1:50-64, 12:50-13:24.

16   The '807 Patent also illustrates the steps of claim 1 in Figs. 4a through 4k with the

17   example of someone creating a listing for a Roman Catholic cathedral on a website with listings

18   of organizations in the Philippines by choosing the responses that best describes the cathedral

19   from a series of multiple-choice questions.  In this example, the website with listings of

20   organizations in the Philippines is the claimed "host website apparatus for listing subscribers" that

21   comprises "a computer system."  As shown in Figs. 4d through 4g, the website contains a

22   database of categories which can be presented to the subscriber as multiple-choice questions.  *See*

23   at Figs. '807 Pat. Figs. 4d through 4g.  This database is the claimed "digital label database for

24   providing to a listing subscriber digital labels representing different specific qualities."  The

25   selections made by the subscriber are then converted into digital labels and stored in a database,

26   corresponding to the claim requirement of "converting the information to digital labels by

27   accessing said digital label database and storing the subscriber's digital labels in said subscriber

28   database."  Finally, the website makes the resulting "labeled" listing of the Roman Catholic

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-8-
SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR

1  cathedral available to someone who searches for it using the labels, corresponding to "said
2  computer system further configured to enable users to search said subscriber database for
3  subscriber digital labels identifying subscriber qualities."

4     As seen from this example, the only steps that claim 1 adds to the abstract idea of
5  classifying "listings" into categories are the admittedly-conventional ones of using computers,
6  databases, and websites.  This puts Claim 1 squarely within the type of claim prohibited in *Alice*.
7  *See* 134 S. Ct. at 2360 (holding that "basic calculation, storage, and transmission functions" are
8  capabilities that "[n]early every computer will include" and do not satisfy § 101).

9     Put differently, claim 1 seeks to monopolize the idea of classifying "listings" into
10  categories whenever this is done through a website using a computer and a database.  Again, this
11  is exactly the type of claim the Supreme Court declared invalid in *Alice*.  *See* 135 S. Ct. at 2360
12  (finding that components such as a "data processing system" and a "communications controller"
13  did not contribute significantly more than the abstract idea); *see also Bilski*, 130 S. Ct. at 3231
14  (finding that "limiting an abstract idea to one field of use or adding token postsolution
15  components" did not make claims patentable).

16                           **CONCLUSION**

17     For the foregoing reasons, Social Concepts respectfully requests that the Court dismiss all
18  of Gonzalez's claims and causes of action with prejudice.

19  Dated:  September 9, 2015

20                                          DLA PIPER LLP (US)

21                                          By:  */s/ Jeffrey L. Johnson*
                                               JEFFREY L. JOHNSON
22                                          Attorneys for Defendant
                                               SOCIAL CONCEPTS INC.

23

24

25

26

27

28

DLA PIPER LLP (US)
LOS ANGELES

WEST\261219615.1

-9-
SOCIAL CONCEPTS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO 35 U.S.C. § 101 - USDC CASE NO. 4:15-CV-01719-YGR